UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RICHARD ANTHONY**     **B.O.P. #44849-074** | : | **CIVIL ACTION NO. 2:17-cv-365**     **SECTION P** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **CALVIN JOHNSON** | : | **MAGISTRATE JUDGE KAY** |

# REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Richard Anthony, who is proceeding *pro se* in this matter. Anthony is an inmate in the custody of the federal Bureau of Prisons ("BOP") and is currently incarcerated at the Federal Correctional Institute at Oakdale, Louisiana. However, this petition relates to events that occurred while Anthony was incarcerated at the Federal Transfer Center ("FTC") in Oklahoma City, Oklahoma.[1] The government filed a response in opposition [doc. 17], and Anthony has filed a reply and supplemental/amended reply [docs. 19, 22].

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Jurisdiction must be judged as of the time a petition is filed. *Lee v. Wetzel*, 244 F.3d 370, 375 n. 5 (5th Cir. 2001). The district of incarceration has exclusive jurisdiction over an inmate's § 2241 petition challenging present physical confinement. *Id.* at 373–74. Because Anthony was incarcerated at the Federal Correctional Institute at Oakdale, Louisiana, when he initiated this action, jurisdiction and venue over his § 2241 petition are proper.

# I.
## BACKGROUND

Anthony brings this petition seeking expungement of a prison disciplinary proceeding arising from an incident report issued to him on August 21, 2016. *See* doc. 1, att. 3, p. 4. According to the incident report, FTC officer J. Hanes was monitoring the camera system and observed inmate Daniel Wright enter a janitor's closet at 4:51 pm on August 20, 2016. *Id.* At 4:55 pm he saw Wright exit the closet, carrying a mop and bucket, with the contents of the bucket concealed by towels. *Id.* Wright took the mop and bucket to his cell, where Officer Hanes arrived at 4:57 pm and found Anthony (Wright's cellmate), Wright, and the mop and bucket. *Id.* A search of the cell revealed four gallons of homemade intoxicants, along with one gallon of tomato juice, four bottles of warm water, and seven empty bottles. *Id.* Officers also searched the janitor's closet and found a trashcan containing homemade intoxicant inside the vent. *Id.* As a result of this incident, Anthony was charged with violations of Prohibited Act Codes 111 and 113 (Making of Alcohol and Possession of Alcohol).[2] The matter was referred to the Disciplinary Hearing Officer ("DHO"), and a hearing was conducted on August 31, 2016. *Id.* at 4, 5–7.

The making of alcohol charge was apparently dismissed before the hearing, and Anthony denied his guilt as to the possession charge. *Id.* at 5. The DHO reviewed a statement from Wright, who assumed full responsibility for the alcohol and maintained that Anthony had no knowledge of it and had just entered the cell when staff arrived.[3] *Id.* at 9. The DHO also considered staff

---

[2] Wright was also charged, presumably, although his charges and their disposition are not included in the record on this matter.

[3] Specifically, Wright stated:
> [Anthony] couldn't have been in the cell for more than a minute, he came in to grab something from his commissary bag hanging on the wall in front of the door. The alcohol was wedged between the locker and the desk with me standing in front of it, there was no way he could [have] seen it or known it was in the cell. The bag the alcohol was in was tied, so there was no smell present either. I see no reason for Richard Anthony to be held accountable for my mistake.

Doc. 1, att. 3, p. 9.

eyewitness accounts, photographs, and the incident report. *Id.* at 6. He then found that the act was committed as charged and sentenced Anthony to 27 days of disallowed good conduct time, 10 days of disciplinary segregation, and 60 days' loss of phone privileges. *Id.* at 5–6. In his findings, the DHO emphasized that the alcohol was found in the common areas, rather than Wright's bunk or locker. *Id.* at 6. He also noted that Anthony is "responsible for his immediate environs" and that he was "in the cell when staff found the alcohol which was out in the open, [and] did not leave the cell or bring it to staff's attention." *Id.*

Anthony exhausted his administrative remedies through the BOP. Doc. 8, att. 1. He then filed his petition in this court. He claims that the above disciplinary proceedings violated his constitutional rights because the finding of guilt was based on evidence that only implicated his cellmate and because the DHO failed to consider Wright's statement exonerating him.[4] Doc. 1, att. 2; doc. 8. In relief he requests that the court grant the petition and order the respondent to restore his good conduct time and expunge the proceeding from his BOP records. Doc. 8, p. 5.

## II.
## LAW & ANALYSIS

A § 2241 petition on behalf of a sentenced prisoner "attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). In order to prevail, a § 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas challenge to a disciplinary proceeding, an inmate must show that the punishment intrudes on a liberty interest protected by the Constitution or some other law. *Orellana v. Kyle*, 65 F.3d 29,

---

[4] Anthony also claims that the proceedings resulted in a violation of the Equal Protection Clause, as he claims that they resulted in sanctions being applied to him in a capricious and retaliatory manner. Doc. 1, att. 2, pp. 3–4. However, he does not identify how he was treated differently from any other similarly situated inmate. Accordingly, he fails to state a claim of discrimination and we view this instead as another objection to the sufficiency of evidence.

31–32 (5th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293 (1995)). It is assumed that federal prisoners have a liberty interest in their accumulated good conduct time. *See, e.g.*, *Henson v. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Watkins v. Lnu*, 547 Fed. App'x 409, 410 (5th Cir. 2013) (unpublished). Thus, because a loss of good conduct time is involved in this proceeding, the Supreme Court's analysis in *Wolff v. McDonnell*, 94 S.Ct. 2963 (1974), and *Superintendent, Massachusetts Correctional Institution v. Hill*, 105 S.Ct. 2768 (1985), governs our review. In order for a prison disciplinary proceeding to comport with the requirements of due process, the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to present evidence; (3) written findings in support of the ruling; and (4) the requirement that on review, "some evidence" support the ruling. *Hill*, 105 S.Ct. at 2773–74; *Wolff*, 94 S.Ct. at 2978–80.

Anthony alleges that his proceeding fell short of these requirements because the DHO did not consider or give proper weight to the exculpatory evidence, and gave improper weight to evidence that Anthony contends only implicated his cellmate. However, he does not show that he was denied the opportunity to present evidence. Accordingly, the only question for this court is whether "some evidence" supports the finding that he had committed Prohibited Act Code 113. In determining whether this standard is met, we do not make an independent assessment of the credibility of witnesses or weigh the evidence. *Hill*, 105 S.Ct. at 2774. Instead, our review is "extremely deferential" and the disciplinary proceeding is overturned "only where no evidence in the record supports the decision." *Morgan v. Dretke*, 433 F.3d 455, 458 (5th Cir. 2005); *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001).

Prohibited Act Code 113 forbids the "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical

staff."[5] The Fifth Circuit has found that evidence that bolt cutters were in an area where the petitioner worked, but to which approximately one hundred inmates had access, did not satisfy the "some evidence" standard in a possession of contraband charge.[6] *Broussard*, supra, 253 F.3d at 877. In a subsequent unpublished decision, however, it determined that there was "some evidence" to support the DHO's finding that the petitioner had possessed contraband, where the incident report showed that the contraband was found in an area that the petitioner shared with only five other inmates, in the wall near the petitioner's bunk bed. *Flannagan v. Tamez*, 368 Fed. App'x 586, 588 (5th Cir. 2010). As the court remarked there, a person has constructive possession "if he knowingly has ownership, dominion, or control over the contraband itself **or** over the premises in which the contraband is located." *Id.* (quoting *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992)) (emphasis added). The court also distinguished *Broussard*, supra, based on the location of the contraband in a living space versus working space, and noted that the fact that other inmates shared the same common area should not prevent the DHO from finding that the petitioner had possessed the contraband because "constructive possession 'may be joint among several individuals.'" *Id.* at 588 n. 6 (quoting *United States v. Riggins*, 563 F.2d 1264, 1266 (5th Cir. 1977)).

The exhibits to the government's response include the photographs reviewed by the DHO. Doc. 17, att. 3, pp. 15–20. The photographs support the assertion that Anthony had only entered the cell shortly before it was searched, as they show Anthony in the hallway while Wright was in the janitor's closet (and appear to show the two speaking). *Id.* at 16–17. They also show the confined

---

[5] 28 C.F.R. § 541.3; *see also* BOP Program Statement 5270.09, *available at* https://www.bop.gov/policy/progstat/5270_009.pdf (last accessed April 6, 2018).

[6] In that matter, the prison disciplinary board had also relied on a tip by a confidential informant. 253 F.3d at 876. The court determined that, because no indicia of reliability for that tip had been provided to the board, the board violated the petitioner's right to due process by considering the tip as probative evidence. *Id.* at 877. The government maintained, and the court disagreed supra, that the location of the bolt cutters still met the "some evidence" standard. *Id.*

nature of the cell, the multiple items for preparation of intoxicants hidden therein (in addition to two bottles of intoxicants, stored separately from the milk bladder filled with four gallons of intoxicant), and the small size of the mop bucket used by Wright. *Id.* at 16–20. Accordingly, this evidence could support the DHO's presumed conclusion that some of the items, including perhaps the separately bottled intoxicant, were stored in the cell prior to the trip to the janitor's closet observed by Officer Hanes, and that Anthony must have known of his cellmate's plan to bring intoxicants into their cell, making him liable for constructive possession of same.

The evidence cited by the DHO in this matter shows that the homemade intoxicants were located in a common area of the cell, to which the petitioner had access and could exercise some control and in which the petitioner was actually present. The fact that Wright admitted to possessing the intoxicants does not prevent the DHO from also finding that the petitioner committed that act. Given our deferential standard of review, we may not weigh this admission or Wright's other exculpatory assertions against the inculpatory evidence relied on by the DHO. Accordingly, the evidence presented is sufficient to sustain the disciplinary conviction and Anthony fails to show a right to federal habeas relief.

### III.
#### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 9th day of April, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE